[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Haydocy v. Ohio Pub. Emps. Retirement Sys.*, Slip Opinion No. 2026-Ohio-1928.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-1928

THE STATE EX REL. HAYDOCY, APPELLANT, *v.* OHIO PUBLIC EMPLOYEE[S] RETIREMENT SYSTEM, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Haydocy v. Ohio Pub. Emps. Retirement Sys.*, Slip Opinion No. 2026-Ohio-1928.]**

*Mandamus—Former state employee failed to demonstrate either that he has a clear legal right to a writ compelling Ohio Public Employees Retirement System ("OPERS") to process his request to transfer his OPERS-held funds to his deferred-compensation plan in absence of notarized consent form or that OPERS has a clear legal duty to provide that relief—Adm.Code 145-2-67(A) permits Public Employees Retirement Board to prescribe time and manner of rollover distributions—State ex rel. Davis v. Pub. Emps. Retirement Bd. (10th Dist.) distinguished—Court of appeals' judgment granting OPERS's motion to dismiss affirmed.*

(No. 2025-0850—Submitted January 6, 2026—Decided May 28, 2026.)

APPEAL from the Court of Appeals for Franklin County,

No. 24AP-432, 2025-Ohio-2056.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ.

**Per Curiam.**

{¶ 1} Appellant, Cory A. Haydocy, appeals the Tenth District Court of Appeals' judgment dismissing his mandamus action against appellee, the Ohio Public Employees Retirement System ("OPERS"). OPERS refused to transfer Haydocy's OPERS-held funds to an eligible deferred-compensation plan because he had declined to submit a notarized consent form that OPERS requires to process refund applications. Arguing that OPERS has no statutory or regulatory authority to require the form, Haydocy requested a writ compelling OPERS to process the requested transfer despite the missing form. The Tenth District granted OPERS's motion to dismiss Haydocy's complaint.

{¶ 2} Because Haydocy's allegations fail to demonstrate either that he has a clear legal right to the requested relief or that OPERS has a clear legal duty to provide it, we affirm the Tenth District's judgment dismissing Haydocy's complaint. We also deny Haydocy's motion to supplement the record under S.Ct.Prac.R. 15.08.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 3} Haydocy was employed by the State of Ohio in various capacities for approximately 11 years, during which he contributed a portion of his earnings to OPERS, a State-run pension system. Haydocy's state employment ended in December 2023. In February 2024, Haydocy submitted to Ohio Deferred Compensation ("ODC") a request to transfer the market value of his OPERS account to his ODC plan. And on May 28, 2024, he submitted to OPERS a refund application requesting that same transfer.

{¶ 4} Haydocy alleged that a month after he sent his refund application to OPERS, he became aware of an OPERS policy requiring the submission of a notarized member-consent form prior to the issuance of refunds exceeding $10,000. Haydocy attached to his complaint a letter from OPERS—dated the same day as his application—and a member-consent form that OPERS had enclosed with the letter. In the letter, OPERS explained that for OPERS "[t]o complete processing of [his] refund application," Haydocy would have to fill out the enclosed consent form, sign it in the presence of a notary, and return it to OPERS. The consent form prompts the signer to acknowledge that "the information provided in the submitted Refund Application is complete and true to the best of [the signer's] knowledge and belief."

{¶ 5} On June 27, 2024, without having submitted the notarized member-consent form, Haydocy emailed OPERS, demanding that it process his refund application and transfer the funds within five business days. OPERS's counsel responded the next day, explaining that the notarized consent form is "*part of the application required by [R.C.] 145.40*" (emphasis in original) and that, with the form missing, the application remained incomplete.

{¶ 6} Based on these allegations, Haydocy asked the Tenth District to issue a writ of mandamus compelling OPERS to process his refund application. Haydocy asserted that OPERS should be compelled to process the application because he had satisfied the applicable "statutory requirements" and because OPERS lacks authority to also require the submission of a notarized member-consent form.

{¶ 7} On August 1, 2024, OPERS filed a motion to dismiss under Civ.R. 12(B)(6). Haydocy filed a response in opposition to that motion, combined with his own motion for summary judgment. Haydocy also filed a "motion to expedite proceedings and for a pre-hearing telephone conference." The matter was referred to a magistrate, and the magistrate issued a decision recommending that the Tenth District grant OPERS's motion to dismiss. Haydocy objected. He also filed

"renewed" motions to schedule a status conference and a motion to compel discovery.

{¶ 8} The Tenth District overruled Haydocy's objections, adopted the magistrate's decision, granted OPERS's motion to dismiss the complaint, and denied Haydocy's outstanding motions as moot.

{¶ 9} Haydocy now appeals to this court as of right. After briefing was complete, Haydocy filed a motion to supplement the record under S.Ct.Prac.R. 15.08.

## II. ANALYSIS

### A. Haydocy's motion to supplement the record

{¶ 10} On February 18, 2026, Haydocy filed a motion to supplement the record under S.Ct.Prac.R. 15.08. Haydocy argues that the record transmitted to this court on July 15, 2025, was incomplete because it omitted a copy of a January 16, 2025 notice informing Haydocy that his objections to the magistrate's decision were scheduled for submission, without oral argument, on February 20, 2025. OPERS did not file a response to Haydocy's motion.

{¶ 11} Under S.Ct.Prac.R. 15.08, we may "direct that a supplemental record be certified and transmitted" to the clerk of this court if (1) any part of the record was not transmitted to this court and (2) the part not transmitted is necessary to our consideration of the questions presented on appeal. As an initial matter, it does not appear that the January 16, 2025 hearing notice is part of the "record" as contemplated by S.Ct.Prac.R. 15.01. That rule provides that the "record on appeal shall consist of" the original papers and exhibits thereto, the transcript of proceedings and exhibits, the original journal entries or certified copies thereof, and "the docket prepared by the clerk of the [transmitting] court." S.Ct.Prac.R. 15.01(A)(1). The January 16 hearing notice does not fall into any of those categories, nor does it bear a file stamp indicating that it was filed in the course of the proceedings below. *See State ex rel. Martens v. Findlay*, 2025-Ohio-5589, ¶ 9

("Because there is no evidence that [the appellant] filed his proposed third amended complaint in the Third District [Court of Appeals], it is not part of the record on appeal.").

{¶ 12} Moreover, inclusion of the January 16 hearing notice is not necessary to our consideration of the question presented in this appeal, *see* S.Ct.Prac.R. 15.08—namely, whether the Tenth District erred in dismissing Haydocy's complaint for a writ of mandamus. For these reasons, we deny Haydocy's motion seeking an order directing preparation and certification of a supplemental record.

### B. The Tenth District correctly concluded that OPERS was within its authority to require the notarized member-consent form

{¶ 13} A motion to dismiss under Civ.R. 12(B)(6) is "procedural and tests the sufficiency of the complaint." *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 1992-Ohio-73, ¶ 9. When a court reviews the sufficiency of a mandamus complaint, the material allegations in the complaint must be taken as true, reasonable inferences must be drawn in favor of the nonmoving party, and the motion may be granted only if it appears beyond doubt from the complaint that the relator cannot prove a set of facts entitling him to recovery. *Id.* at ¶ 10. "We review de novo a decision granting a motion to dismiss under Civ.R. 12(B)(6)." *State ex rel. Sands v. Coulson*, 2021-Ohio-671, ¶ 6.

{¶ 14} To be entitled to a writ of mandamus, Haydocy must establish (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of OPERS to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex. rel. Husted v. Brunner*, 2009-Ohio-4805, ¶ 11.

{¶ 15} As his first proposition of law, Haydocy argues that the Tenth District erred by concluding that OPERS was within its lawful authority to require the notarized member-consent form. Haydocy's argument is not persuasive.

{¶ 16} R.C. Ch. 145 contains the statutory provisions governing OPERS. In addition to creating OPERS itself, the chapter establishes an entity called the Public Employees Retirement Board. R.C. 145.04(A). The board is tasked with the "general administration and management of" OPERS and with "the making effective of Chapter 145." *Id.* The board is also obligated by statute to act as a trustee of OPERS-held funds, R.C. 145.11(A), and to "safeguard and prudently invest the funds entrusted to it," *State ex rel. Tarrier v. Pub. Emps. Retirement Bd.*, 2021-Ohio-649, ¶ 21. To carry out these responsibilities, the board is empowered to "adopt rules in accordance with" R.C. 111.15 for "the proper administration and management" of R.C. Ch. 145. R.C. 145.09.

{¶ 17} Among the many rules the board has duly adopted, the magistrate focused on three as relevant here. First, Adm.Code 145-1-66 provides that OPERS may use "an electronic medium to perform an action or notice" and that such electronic medium "shall constitute a form provided or required by" OPERS. Second, Adm.Code 145-2-67(A) provides that an OPERS member or contributor "may elect . . . to have any portion of an eligible rollover distribution paid directly to an eligible retirement plan" but only "at the time and in the manner prescribed by the board." Third, Adm.Code 145-2-70(B) provides that "[r]ecipients of a benefit or payment . . . shall provide" OPERS with certain specific information to facilitate payment by direct deposit as well as "such other information" as OPERS may require. OPERS may "withhold a benefit or payment" until the recipient provides the required information. *Id.*

{¶ 18} Given these statutory and regulatory authorities, the magistrate concluded that Haydocy could not establish a clear legal right to the requested relief or a clear legal duty on the part of OPERS to provide it. 2025-Ohio-2056, ¶ 49 (10th Dist.). The Tenth District adopted that conclusion. *Id.* at ¶ 21.

{¶ 19} In urging a different result on appeal, Haydocy primarily relies on R.C. 145.40(A)(1). That provision states that "upon application" by a member of

OPERS, "the board *shall pay* the member the member's accumulated contributions" so long as "[t]wo months have elapsed since the member's service . . . was terminated" and "[t]he member has not returned to service . . . during that two-month period." (Emphasis added.) Haydocy leans heavily on the phrase "shall pay," asserting that this language imposes a duty on OPERS to process his refund application because he has met "the statutory requirements"—i.e., two months have elapsed since his state service was terminated, and he has not returned to state service during that two-month period.

{¶ 20} But Haydocy neglects to fully engage with a third requirement included in R.C. 145.40(A)(1): that accumulated contributions shall be paid "upon application" by a member. Although he asserts that he completed and successfully submitted the initial application, Haydocy points to no statute or rule that prescribes the elements of a refund application or that requires OPERS to process an application that it deems incomplete or inaccurate. Indeed, the relevant statutes and rules actually confirm OPERS's discretion on this front.

{¶ 21} As noted above, R.C. 145.09 explicitly permits the board to "adopt rules . . . for the proper administration and management" of R.C. Ch. 145, which necessarily includes R.C. 145.40. One of the rules the board has promulgated pursuant to this authority is Adm.Code 145-2-67(A), which provides that an OPERS member may elect to have the refund authorized by R.C. 145.40 "paid directly to an eligible retirement plan . . . in a direct rollover." *See also* Adm.Code 145-2-67(B) ("'Eligible rollover distribution' means a lump sum distribution from the member or contributor's account pursuant to section 145.40 . . . ."). Haydocy seeks just such a "rollover"—i.e., he wishes to have the balance of his OPERS account paid directly to ODC. *See* Adm.Code 145-2-67(B)(2)(e) ("[e]ligible retirement plan" includes "[a]n eligible deferred compensation plan").

{¶ 22} But Adm.Code 145-2-67(A) explicitly permits the board to prescribe the "time" and "manner" of rollover distributions, such as the one Haydocy

requested to his ODC plan. Thus, while Haydocy was free to "elect" a direct rollover to ODC, Adm.Code 145-2-67(A), he was not free to do so at any time or in any manner—instead, he must do so at the time and in the manner prescribed by the board. Here, the board requires that before it will transfer large sums of money it holds in trust for its members, the person seeking the monetary transfer must prove his identity by having his transfer request notarized.

{¶ 23} While Haydocy cites *State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 119 Ohio App. 181 (10th Dist. 1963), that case is not analogous. In *Davis*, the relator requested a writ of mandamus compelling the board to process his application for a refund of his accumulated OPERS contributions. *Id.* at 181-182. The board refused to process the application, arguing that Davis had been only "temporarily suspended"—i.e., he had not "'ceased to be a public employee,' nor [had] his 'public service' been terminated as required by" R.C. 145.40. *Id.* at 182, quoting the statute. The board also cited its policy "to have the director of the employing agency certify that the employment has been terminated before a payment of contributions is made," which certification had not occurred. *Id.*

{¶ 24} The Tenth District rejected the board's argument and granted the writ. Critically, the question whether Davis had ceased to be a public employee or had been terminated from public service was answered by reference to the statute itself, which contained definitions of the term "public employee" and the phrase "public service terminates." *Id.* at 183, citing former R.C. 145.01(A) and (Y), 129 Ohio Laws 1714 (effective Oct. 27, 1961). The court concluded that "[a] laid-off employee who is not being compensated ceases to be a public employee, and if no longer a paid employee, it is clear that his public service has been terminated." *Id.* at 184. And the board's policy of requiring a certification from the director of the employing agency was of no moment because there had been "no showing that such a certification [was] required" by a rule, regulation, or statute. *Id.* at 182.

{¶ 25} This case is different. Neither party has pointed to—and this court has not previously identified—a statute, rule, or regulation that defines "application" for purposes of R.C. 145.40. Unlike the policy cited by the board in *Davis*, OPERS's policy of requiring a notarized acknowledgment of the completeness and truth of the information provided in a refund application does not conflict with R.C. Ch. 145 or the rules adopted thereunder. To the contrary, OPERS's policy is consistent with the requirement that payment of a member's accumulated contributions be made "upon application," R.C. 145.40(A)(1), as well as with the rule duly adopted by the board that permits it to prescribe the time and manner of transfers like the one Haydocy seeks here, *see* Adm.Code 145-2-67(A).

{¶ 26} In sum, Haydocy's allegations fail to establish a clear legal right to have OPERS process his refund application in the absence of a notarized member-consent form or a clear legal duty on OPERS's part to do so. *See Husted*, 2009-Ohio-4805, ¶ 11.

## C. Haydocy's remaining propositions of law do not reveal any error in the proceedings below

### 1. Haydocy's second proposition of law

{¶ 27} In support of his second proposition of law, Haydocy raises several purported errors in the proceedings below. Specifically, Haydocy appears to argue that the Tenth District erred by (1) misapplying the standard applicable to a motion to dismiss, (2) denying as moot his motions for summary judgment, to compel discovery, and to schedule a status conference, and (3) declining to consider his constitutional arguments. According to Haydocy, these alleged errors deprived him of his "fundamental due process rights." Haydocy is wrong.

{¶ 28} First, the magistrate invoked and applied the appropriate standard in considering OPERS's motion to dismiss. *See* 2025-Ohio-2056 at ¶ 36 ("A motion to dismiss . . . is procedural and tests the sufficiency of the petition or complaint . . . ."). Nothing in the magistrate's decision supports Haydocy's

assertions that the magistrate "accepted OPERS's mischaracterizations of the facts" or "weigh[ed] [the] evidence" against him. To the contrary, the magistrate's findings of fact are taken exclusively from Haydocy's allegations, and the magistrate's legal analysis did not rely on any factual inferences—much less inferences in OPERS's favor. And although Haydocy argues that the magistrate and the Tenth District failed to "adequately consider the totality of the circumstances" and to conduct a "public interest analysis" before dismissing his complaint, he does not explain what those inquiries would entail or why the court would be required to engage in them before ruling on the motion to dismiss.

{¶ 29} Second, the Tenth District did not err in denying as moot Haydocy's motions for summary judgment, to compel discovery, and to set a status conference. When the Tenth District correctly granted OPERS's motion to dismiss, Haydocy's action ceased to present a live controversy and, consequently, the parties no longer held legally cognizable interests in the outcomes of the motions. *See State ex rel. Gaylor, Inc. v. Goodenow*, 2010-Ohio-1844, ¶ 10, quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969) ("A 'case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'").

{¶ 30} Moreover, to the extent that Haydocy argues that the magistrate's or the Tenth District's "fail[ure] to enforce discovery rules"—i.e., denial of his discovery-related motions—violated his due-process rights, he is wrong. For one thing, "courts have broad discretion over discovery matters." *State ex rel. Citizens for Open, Responsive & Accountable Govt. v. Register*, 2007-Ohio-5542, ¶ 18. Further, even if the Tenth District abused that discretion, such abuse would "not rise to the level of a due process violation because 'there is no general constitutional right to discovery.'" *Ditech Fin., L.L.C. v. Global Capital Partners*, 2018-Ohio-1998, ¶ 11 (10th Dist.), quoting *Midland Steel Prods. Co. v. Internatl. Union, United Auto., Aerospace & Agricultural Implement Workers of Am., Local 486*, 61 Ohio St.3d 121, 131 (1991).

{¶ 31} Finally, the Tenth District did not err in declining to consider Haydocy's constitutional arguments. In his complaint, Haydocy did not even suggest a constitutional angle to his case; he requested mandamus relief only on the grounds that OPERS's actions were "inconsistent with relevant statutes and regulations" and were "an abuse of discretion." Nor did Haydocy raise constitutional arguments in opposition to OPERS's motion to dismiss. Not until his objections to the magistrate's recommendation did Haydocy first raise alleged violations of his rights to due process and "the peaceful enjoyment of his property." Under these circumstances, the Tenth District did not err in declining to address them. *See State ex rel. Miller v. Reed*, 1999-Ohio-315, ¶ 7.

### 2. *Haydocy's third proposition of law*

{¶ 32} As his third proposition of law, Haydocy asserts that the Tenth District erred by "disregarding compelling allegations" of "OPERS's bad faith, systemic obstruction, and breach of fiduciary duty." However, most of Haydocy's briefing on this point simply recasts arguments he asserts in support of his first and second propositions of law—for example, that Haydocy was entitled to discovery, that the magistrate improperly relied on "OPERS' unsubstantiated assertions," that OPERS had a duty to process Haydocy's refund application, that his constitutional rights were infringed, and so on. We reject these arguments for the reasons explained above.

{¶ 33} The only new arguments Haydocy sets forth in support of his third proposition of law lack merit. Haydocy goes so far as to malign OPERS's litigation strategy, accuse OPERS and ODC of "collusion," and assert that OPERS strategically delays processing refund requests to "increase revenue." But as the Tenth District aptly noted, these assertions are not supported by the record. *See* 2025-Ohio-2056 at ¶ 20. To be sure, Haydocy is entitled to the benefit of "'reasonable inferences'" that may be drawn from his factual allegations, *Hanson*, 1992-Ohio-73, ¶ 10, quoting *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192

(1988). But the inferences he asks us to draw are not reasonable; they are, at best, speculative. And more importantly, they are irrelevant to the legal question faced by the Tenth District, which was whether Haydocy's complaint stated a claim cognizable in mandamus. That is, even taken as true, Haydocy's assertions of OPERS's nefarious intent have no bearing on whether he has a clear legal right to the requested relief or whether OPERS has a clear legal duty to provide it. *See Husted*, 2009-Ohio-4805, at ¶ 11.

### III. CONCLUSION

**{¶ 34}** Haydocy failed to establish a clear legal right to have OPERS process his refund application in the absence of a notarized member-consent form or a clear legal duty on OPERS's part to do so. Therefore, we affirm the judgment of the Tenth District Court of Appeals dismissing Haydocy's complaint for a writ of mandamus. We also deny Haydocy's motion to supplement the record.

Judgment affirmed.

_____

Cory A. Haydocy, pro se.

Dave Yost, Attorney General, Henrique A. Geigel, Pension Counsel, and Mary Therese J. Bridge, Assistant Attorney General, for appellee.

_____